STATE, THEODORE MACKNET, PROSECUTOR, v. MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. The estate which the owner has in lands in the city of Newark, may be sold for personal taxes assessed against him, before resorting to his personal property.
2. By the seventy-seventh section of the charter of Newark, taxes assessed upon real estate have priority over mortgages, but taxes assessed upon personal property of the owners of land, have not such priority.

On *certiorari.*

Argued at June Term, 1879, before Justices DEPUE, DIXON and VAN SYCKEL.

For the plaintiff, *W. H. Francis.*

For the defendant, *Henry Young.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The object of the writ of *certiorari,* in this case, is to test the validity of a certain assessment for taxes for the year 1875, against Orson Wilson, of the city of Newark, and also of a certain assessment for taxes upon real estate then owned by said Wilson, in said city, and of the proceedings by virtue of which the lands were sold to satisfy the said assessments.

No specific defect in making the assessment is pointed out in the reasons filed.   The omission relied upon is that the list of assessments delivered to the receiver fails to exhibit the rate per dollar at which the tax is assessed.

The list shows the entire valuation upon which the assessment is to be made, and the sum to be raised, and therefore the rate of taxation would be made apparent by simple calculation.   The board fixed the per cent. of taxation, and each tax bill showed, expressly, the rate per dollar assessed.   The tax was laid in 1875, and the writ of *certiorari* was applied for in 1879.   After the lapse of so much time, an omission of this character ought not to be considered.

The second reason relates to the mode in which the tax was collected.

The prosecutor insists—

1. That the personal property of Wilson should have been exhausted before a warrant was issued to sell land.

2. That the personal tax should have been made out of all the real estate of Wilson, and not included in the warrant for the tax on specific real estate.

3. That the warrant actually issued included direction to sell personalty, and was not obeyed.

Section 77 of the city charter (*Charter Book, p.* 46,) provides: "That any assessment of taxes hereafter made in the city of Newark against any person or persons, shall be and remain a lien on all lands and real estate of such person, within the city, for the amount of such assessment, with interest thereon, and all costs and fees, for the space of two years from the twentieth day of June of the year in which said assessment shall be made; and any assessment of taxes hereafter made upon any lands and real estate within the city, shall be and remain a lien upon such lands and real estate for two years, notwithstanding any devise, descent, alienation, mortgage, or other encumbrance thereof, and notwithstanding any mistake in the name or names of the owner or owners, or omission to name the owner or owners of such lands and real estate."

This section refers to two classes of taxes: first, the tax on the personal property of those who own real estate within the city, and, secondly, the tax on such real estate of such persons, both of which taxes are expressly declared to be a lien on real estate. The first is a lien, generally, on all real estate of the taxpayer within the city; the latter is a lien on the real estate assessed. It is admitted that no attempt was made by the city authorities to collect the personal tax out of Wilson's personal property.

Was it necessary to do so before resorting to the real estate? The office of receiver of taxes for Newark was created by act of March 10th, 1859 (*Pamph. L., p.* 476.) The receiver was

vested with the powers and duties which formerly fell upon the several ward collectors. It was the duty of the receiver of taxes, within ten days after the 20th of January in each year, to make out a list of delinquent taxpayers, and deliver the same to a justice of the peace, who was directed to issue his warrant for the collection of the same, both real and personal, to the receiver of taxes, and the receiver was authorized to collect said taxes, both real and personal, out of the personal property of the person assessed. If the person assessed, and failing to pay his tax, owned real estate in the city, it became the duty of the receiver to make return of said tax to the common council, who delivered the return to the city treasurer, and he prepared a transcript of the unpaid taxes, so far "as the same were assessed on any lands and real estate within the city," or "were a lien upon any such lands and real estate," and, after due notice, proceeded to sell said lands at public sale, for such taxes. *Charter Book of Newark*, §§ 79, 80, 81, 84, 86, 87, 88, *pp.* 47, &c.; *Pamph. L.*, 1859, *p.* 476, §§ 3, 5; *Pamph. L.*, 1866, *p.* 451, § 14.

It will be observed that, by Section 80, (*Charter Book, p.* 48,) where the taxpayer had no personal or real estate, out of which the tax could be made, his body could be taken by the warrant therein authorized.

This is a brief summary of the law as it stood until March 25th, 1869. In that year (*Pamph. L., p.* 673, § 5,) an act was passed providing that "whenever any taxes on real or personal estate, or otherwise, against the owner or owners of any real estate, remain unpaid on the twentieth day of January in any year, the receiver of taxes of the city of Newark shall cause a warrant to be issued in a book or books specifying the ward in which the delinquency occurs, and separately from the warrants issued to the several deputy collectors of arrears, for the ordinary personal taxes; and the said receiver of taxes, as collector of arrears, shall collect all such taxes, which shall be payable at his office, and pay them over to the city treasurer," &c.

This legislation changed the method of procedure for the

collection of taxes in the city, by authorizing the issuing of two warrants—one for ordinary personal taxes which were not liens on real estate, which could be collected by sale of personal property, or, on default thereof, by imprisonment of the body.

The other warrant was to be issued to the receiver of taxes, as collector of arrears, for the collection of any tax on real or personal estate, or otherwise, against the owner of any real estate—that is, any tax assessed on real or personal estate against the owner of real estate, remaining unpaid on the 20th of January in each year.

This section gives to the receiver no power to sell the lands; he was merely to collect, and on failure to do so, was required by said section to make return of the unpaid taxes to the city treasurer, on the first Tuesday of August in each year, whose duty it was, under the sections of the charter before referred to, to make sale of the lands. A further change was made in 1873. By an act passed in that year, (*Pamph. L.*, *p.* 314,) the office of comptroller was created, and, by Section 12, it was provided that, immediately after the 20th of January in each year, the receiver of taxes shall make a final return and statement to the comptroller, of all unpaid taxes assessed against the owners of real estate for the preceding year; and thereupon the comptroller was authorized to do what the city treasurer before had been required to do—that is, to sell lands for unpaid taxes which were a lien on real estate. The power here given to the comptroller is limited to unpaid taxes assessed against owners of real estate. It has no relation to those taxes assessed upon personal property of those who have no real estate.

This review of the complicated legislation on this subject presents the law in its existing form for the collection of taxes in the city of Newark, as I understand it. The distinction is clearly drawn between the mode of proceeding to collect ordinary personal tax, which is not a lien on real estate, and taxes (real or personal) assessed against the owners of real estate.

With the latter we are concerned in this case, the taxes

having been assessed against Wilson, who was the owner of real estate in the city..

The act of 1873 (*Pamph L.*, *p.* 320, § 12,) requires the receiver of taxes to make a final return and statement to the comptroller of all such unpaid taxes. No requirement exists in that act for the comptroller to sell personal property to satisfy taxes assessed against an owner of real estate, and therefore the warrant issued to him to that end cannot invalidate the proceedings, if otherwise legal. After the receiver delivered the statement to the comptroller, it became the duty of the latter to prepare a transcript of unpaid taxes, in the same manner as the city treasurer had before been required to prepare it. *Pamph. L.* 1873, *p.* 320, § 12.

This transcript is to be a statement of the unpaid taxes which have been assessed upon lands and real estate within the city, or which are liens upon such land and real estate, the description thereof, the names of the owners, and the amount of the taxes thereon.

Immediately after this transcript is completed, it is the duty of the comptroller to give notice of it, by publication, and that, unless said taxes are paid at his office in twenty days, he will proceed to sell lands for the same. *Pamph. L.* 1873, *p.* 320, § 12 ; *Charter Book, p.* 50, § 84.

I think, therefore, upon a fair construction of this legislation, the comptroller had power to sell lands for these taxes, without first resorting to the personal estate of the taxpayer.

But it is insisted that the personal taxes assessed against Wilson, who was a land owner, were a lien on all lands of Wilson in the city, and that the city had no right to make it a special lien on one particular piece of property. The answer to this is that the lien would continue upon all the real estate until the tax was satisfied by the sale of a particular piece, and that there is nothing in the law to limit the election of the city as to what particular piece shall be sold.

A more serious difficulty appears in the fact that, in the return made to the comptroller, the personal tax and the tax assessed on the land were blended together.

The defendant relies upon the general tax law, (*Rev.*, *p.* 1172,) that no tax shall be reversed on *certiorari* by reason of blending together two or more taxes, to meet this objection; but that provision does not apply to this case.

It is not an objection to the tax itself that the two are blended, but to the mode in which it is attempted to be enforced, by sale of the real estate. It will not invalidate the tax, but does it vitiate the sale? It is clear that, under that return, the comptroller could not have made a valid sale of any land except the particular piece of real estate which was assessed, because the tax assessed upon that particular piece of real estate would not have been a lien upon any other land, and the taxes being blended, there would have been nothing in the statement to show the amount of the personal tax, which was all that could lawfully have been made out of other real estate. In this case the only land sold was the land which was assessed, and which was, therefore, liable for both taxes, and was subject to be sold for both taxes.

It was not material, so far as Wilson himself was concerned, that the taxes should be separated, as his estate in the land was subject to be sold for both taxes. None of his rights were impaired as to that piece of property, although the city could not, under that proceeding, have sold other lands of Wilson for the payment of that tax. Of this Wilson could not complain, as it operated not against him but in his favor.

While this sale might be maintained as against the taxpayer, other rights have intervened which present the case in another aspect.

The Mutual Benefit Life Insurance Company held a mortgage upon the premises sold, antedating the levying of the taxes in question, which mortgage has been since foreclosed, and said premises purchased at the foreclosure sale by Theodore Macknet, the relator, for the mortgagee. The relator insists that, assuming the proceedings to be legal, the personal tax was a lien only on the owner's equity of redemption, and that, therefore, his title under the foreclosure sale will prevail

over the tax title. If the tax sale had been made for the personal tax alone, the question as to the extent of the lien could not be raised on this argument, for the relator, if right in his premises, would have the paramount title.

The language of the seventy-seventh section of the Newark charter is as comprehensive as that in the charter of Trenton, which, in the case of *Trustees for the Support of Public Schools* v. *Trenton*, 3 *Stew.* 674, was held to give real estate taxes priority over mortgages. At the time of the assessment of the tax in question, the five-county act (*Pamph L.* 1868, *p.* 865,) was in force in Essex county. By the provisions of this act, all mortgages upon real and personal property in said county were exempt from taxation in the hands of any inhabitant of this state. Under this act, the tax upon land was necessarily assessed against the entire estate, and not upon the value of the equity of redemption, and the lien of the tax would, therefore, justly attach to the fee. The Supreme Court of Massachusetts, in *Parker* v. *Baxter*, 2 *Gray* 188, under a narrower statutory provision than the one contained in the Newark charter, held the tax lien to be commensurate with the estate taxed. It must be admitted that the lien of the tax levied on the land is superior to the lien of the prior mortgage, and it is, therefore, important to determine whether the lien of the personal tax is upon the equity of redemption of Wilson only.

By the ninety-first section of the city charter, the prosecutor had a right to redeem the land after the tax sale.

The mortgagee would be compelled to redeem the property from the sale for the former tax, while he would be unaffected by the latter, if the owner's estate only could be sold under it. Assuming this to be so, it was necessary to separate these taxes, and to sell each estate for the tax which was a lien upon it, so that those holding encumbrances could exercise their right of redemption under the charter, or, in case it was not redeemed, that the term for which it was sold should not be extended by reason of adding the personal tax.

The real estate tax and the personal tax were blended in

the statement to the comptroller, and the sale was made for the entire sum. Without conceding that the legislature has power to make a tax on the personal property of a land-owner a lien on his real estate, paramount to the encumbrance of a mortgage executed before the passage of such a law, an intention to give such a tax priority in any case, should not be imputed to the law-maker, in the absence of unmistakable language to that effect, while the law, where it is clearly written, must be enforced according to its letter, however harsh and impolitic it may appear to the judicial mind; in cases of real doubt and ambiguity, the consequences of a particular interpretation may be justly regarded.

To declare that a mortgage on land shall be subsequent and subject to all after taxes assessed upon the personal estate of the owner of the equity of redemption, differs but slightly from taking the property of one citizen to pay the debt of another. The injustice of such a proceeding would be so striking as to cast a doubt upon the correctness of the interpretation which established such a rule. A fair construction of the seventy-seventh section of the charter before cited, will not lead to that result.

The words, "notwithstanding any devise, descent, alienation, mortgage, or other encumbrance," apply only to the assessment of taxes upon land, and not to the personal tax. This is the true grammatical construction of the section. This is shown by the subsequent language, "and notwithstanding any mistake in the name or names of the owner or owners, or omission to name the owner or owners of such lands or real estate."

This relates exclusively to real estate assessments, and could not apply to personal estate taxes. In assessing the latter, the person assessed is not named as the owner of real estate. This clause shows that the draftsman had in mind only the taxes upon real estate, and that it was his purpose to secure their payment beyond any contingency. This was a wise, and perhaps essential measure for the collection of the public dues, and there is manifest in it no injustice. The blending

of the two taxes, and the sale for both, was illegal as to the relator, who was entitled to redeem by paying the tax assessed upon the land, and the costs which had accrued upon that. The tax sale should, therefore, be set aside, with costs. It is not necessary to determine whether the provisions of the city charter or of the state laws, providing for the collection of personal taxes by the sale of personal property, are still in force in Newark. All that is now decided is that the estate which the owner has in lands, may be sold for personal taxes assessed against him, before resorting to his personal estate.